UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
         :
SHARIF MARCUS LOWMAN,   :
         :
                    Plaintiff,   :
         :     16-CV-6518 (VSB)
              -v-          :
         :    **MEMORANDUM AND OPINION**
MAUREEN BAIRD, et al.,   :
         :
                    Defendants.   :
         :
------------------------------------------------------------ X

Appearances:

Sharif Marcus Lowman
Brooklyn, New York
*Pro se Plaintiff*

Sharanya Mohan
Assistant United States Attorney
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Sharif Marcus Lowman brings this action pro se alleging claims pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Maureen Baird, the warden of the Metropolitan Correctional Center at the times at issue, and David Gonzalez and Tijuana Doctor[1], Lieutenants with the Federal Bureau of Prisons ("BOP") (collectively, the "Individual Defendants"), for failure to protect him from an attack by another inmate, and under the Federal Tort Claims Act ("FTCA") against the United States (together with the Individual Defendants, "Defendants"), for providing negligent medical care following

---

[1] Lieutenant Doctor was erroneously named Lieutenant "Doctrine" in Plaintiff's complaint. (*See* Defs.' Mem. 1.) "Defs.' Mem." Refers to Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint and, in the Alternative, for Summary Judgment. (Doc. 17.)

the attack. Before me is Defendants' motion to dismiss Plaintiff's complaint and, in the alternative, for summary judgment. (Doc. 16.) Because I find that Plaintiff failed to exhaust his administrative remedies, Defendants' motion is GRANTED.

I. **Background**[2]

As of at least July 2015, Plaintiff was a pretrial detainee housed at the Metropolitan Correctional Center ("MCC") in Manhattan. (Compl. 2, 4.)[3] In July 2015, Plaintiff told Lieutenant Doctor that he needed to be separated from an inmate named "Azouki". (*Id*. at 22.) Later that month, Plaintiff and Azouki were brought to Lieutenant Doctor's office following an altercation between the two prisoners. (*Id.* at 24.) Plaintiff states that he informed Lieutenant Doctor that he and Azouki "may need to be separated." (*Id.*) Lieutenant Doctor responded saying that Plaintiff "need[ed] to learn how to get along or [he] will be sent to the [Special Housing Unit]." (*Id.*)

Plaintiff claims that on August 11, 2015, he was attacked by Azouki who used a padlock wrapped in a sock to strike Plaintiff in the head and face several times. (*Id.*) Plaintiff asserts that as a result of the attack he sustained several injuries, including deep lacerations on his head and face, contusions, memory loss, dizzy spells, migraines, and nightmares. (*Id.* at 5, 25.) Following the attack, while suffering from open and bleeding wounds and without receiving immediate medical attention, Plaintiff was placed in a cell in the Special Housing Unit. (*Id.* at 25–26.) Terrance Thomas, a prison nurse, later took Plaintiff's temperature but returned Plaintiff to his cell without further tending to Plaintiff's injuries. (*Id.* at 27.)

---

[2] I assume Plaintiff's allegations contained in the Complaint, (Doc. 2), to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to the Complaint, filed on August 16, 2016. (Doc. 2.) The pages and paragraphs of Plaintiff's Complaint do not have consecutive or continuous numbers. Accordingly, all references to the Complaint will be to the numerical page numbers given to the Complaint by the court's ECF filing system.

2

On October 22, 2015, Plaintiff submitted an informal request for administrative resolution, known as a "BP-8." (*Id.* at 8, 28.) Plaintiff's BP-8 concerned the injuries Plaintiff suffered during the August 2015 attack. (*Id.*) The BOP's response indicated that Plaintiff had been "added to sick call to discuss your medical concerns." (*Id.*)

On November 18, 2015, Plaintiff filed a Request for Administrative Remedy form, known as a "BP-9." (*Id.* at 9, 31.) In his BP-9, Plaintiff complained that his BP-8 had been "lost by [BOP] staff." (*Id.* at 9, 16.) On February 3, 2016, the warden of MCC responded to Plaintiff's BP-9, informing Plaintiff that his BP-8 had in fact been addressed and resolved and not discarded. (*Id.* at 16.) Because Plaintiff had been transferred to the Metropolitan Detention Center ("MDC") in Brooklyn by February 3, the MDC warden provided a similar response denying Plaintiff's BP-9. (*Id.* at 17.)

On December 14, 2015, prior to receiving the responses to his BP-9, Plaintiff submitted a Regional Administrative Remedy Appeal, known as a "BP-10," regarding the August 2015 attack and the lack of subsequent medical treatment provided. (*Id.* at 18.) In particular, Plaintiff complained that he was placed in the Special Housing Unit without being tested for a concussion or otherwise being medically treated or evaluated. (*Id.* at 10–13.) On December 18, 2015, Plaintiff's BP-10 was rejected because Plaintiff had not filed a BP-9 concerning the subject of his BP-10 appeal. (*Id.* at 19.)

On approximately January 13, 2016, Plaintiff submitted a Central Office Administrative Remedy Appeal, known as a "BP-11." (*Id.* at 20.) In his BP-11, Plaintiff contended that he was placed in the Special Housing Unit following the August 2015 attack without receiving needed medical treatment. (*Id.*) On January 20, 2016, Plaintiff's BP-11 was rejected because, among other reasons, Plaintiff had not submitted a request concerning the subject of the BP-11 through a

BP-9. (*Id.*)

## II. **Procedural History**

Plaintiff commenced this action by filing his Complaint on August 16, 2016. (Doc. 2.) On November 8, 2016, counsel for Defendants submitted a letter requesting an extension until December 21 to answer or otherwise respond to the Complaint, (Doc. 13), which I granted, (Doc. 15). On December 21, 2016, Defendants filed their motion, (Doc. 16), along with a memorandum of law in support, (Doc. 17), the declaration of Adam M. Johnson with exhibits, (Doc. 18), the declaration of Terrance Thomas with exhibits, (Doc. 19), Rule 56.1 Statement, (Doc. 20), and Local Rule 12.1 Notice to Pro Se Litigant, (Doc. 21). On December 27, 2016, I ordered the parties to participate in a pre-motion conference, to be held on February 10, 2017. (Doc. 23.) I ordered Defendants' motion to be held in abeyance pending the conference. (*Id.*) I informed Plaintiff that he need not submit an opposition to Defendants' motion until otherwise directed, and instructed Plaintiff to submit a letter responding to Defendants' motion by January 20, 2017. (*Id.*)

On January 6, 2017, Plaintiff submitted a letter requesting that I appoint an investigator to assist Plaintiff with locating and obtaining witness declarations. (Doc. 26.) On January 10, 2017, I denied Plaintiff's request. (Doc. 27.)

On January 19, 2017, Plaintiff submitted a letter in response to Defendants' motion, along with an opposition to the motion. (Docs. 29, 30.) At the conference held on February 10, 2017, I granted Plaintiff's request to submit an additional response to Defendants' motion by February 20, and directed Defendants to submit their reply papers by March 20.

On February 22, 2017, Plaintiff moved to substitute the United States as Defendant in place of nurse Terrance Thomas, who was originally named in the Complaint as a defendant.

4

Plaintiff sought this substitution because 42 U.S.C. § 233(a), which provides that a claim against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, is the exclusive remedy for injuries arising from care provided by a Public Health Service employee, such as nurse Thomas, acting within the scope of his employment. (Doc. 34.) Defendants consented to Plaintiff's request, (Doc. 35), and I ordered that Plaintiff's Complaint be deemed amended without the issuance of a new complaint, (Doc. 38).

On February 22, 2017, Plaintiff also submitted a supplemental memorandum of law in opposition to Defendants' motion. (Doc. 37.) Defendants filed their reply and the Supplemental Declaration of Adam M. Johnson on March 20, 2017. (Docs. 39, 40).

### III. Legal Standards

#### A. *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). It is the plaintiff's burden to prove, by a preponderance of the evidence, that subject matter jurisdiction exists. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### B. *Rule 56*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### C. *Pro Se Litigant*

Ordinarily a court cannot consider allegations or materials outside of a complaint when evaluating a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted).

"[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *accord Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant

on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (citations omitted). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Therefore, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Defendants move to dismiss or, in the alternative, for summary judgment on the following grounds: (1) failure to exhaust administrative remedies available under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; (2) lack of subject matter jurisdiction based on Plaintiff's failure to submit an administrative tort claim to the BOP, as required by the FTCA; (3) failure to state a claim against Lieutenant Doctor for failure to protect; (4) failure to allege any personal involvement on the part of Defendants Baird and Gonzalez; and (5) Defendants' entitlement to qualified immunity. (*See* Defs.' Mem. 1–2.) Because I find that Plaintiff failed to exhaust his administrative remedies warranting the dismissal of the Complaint, I do not address the other bases for dismissal raised by Defendants.

### A. Bivens *Claims*

Plaintiff alleges that the Individual Defendants violated his constitutional rights under *Bivens*. (*See generally* Compl.) "[W]here an individual has been deprived of a constitutional

8

right by a federal agent acting under color of federal authority, the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents no special factors counselling hesitation in the absence of affirmative action by Congress." *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007) (internal quotation marks omitted).

Plaintiff's Complaint does not assert any specific violations of Plaintiff's constitutional rights. However, because I must interpret the allegations in pro se Plaintiff's Complaint liberally, I read the Complaint to assert *Bivens* claims against the Individual Defendants for failure to protect a pretrial detainee, in violation of the Fifth Amendment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Defendants assert that Plaintiff's *Bivens* claims should be dismissed because Plaintiff failed to exhaust his administrative remedies under the PLRA.

### 1. Applicable Law

Under the PLRA, a prisoner pursuing a federal lawsuit, including a *Bivens* action, is required to exhaust the available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). Exhaustion is mandatory, and unexhausted claims may not be pursued in federal court. *See Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam). The purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)

9

(alteration in original and internal quotation marks omitted). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Lawsuits brought by inmates alleging inadequate medical care are within the scope of the PLRA. *See, e.g.*, *Pack v. Ross*, No. 05 CV 9914(LBS), 2006 WL 2714711, at *3 (S.D.N.Y. Sept. 21, 2006).

The PLRA requires "proper exhaustion," which obligates prisoners to "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks omitted). Prisoners in BOP custody exhaust their administrative remedies by following the BOP's four-step Administrative Remedy Program. *See generally* 28 C.F.R. pt. 542; *see also Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007). First, a prisoner must attempt informal resolution of his complaint by presenting the issue to prison staff members through a BP-8 form. *See* 28 C.F.R. § 542.13(a); *Banks v. United States*, No. 10 Civ. 6613(GBD)(GWG), 2011 WL 4100454, at *10 (S.D.N.Y. Sept. 15, 2011), *adopted by*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011). Second, if the issue is not resolved informally, the prisoner must submit a formal written Administrative Remedy Request to the warden using a BP-9 form. *See* 28 C.F.R. § 542.14; *Banks*, 2011 WL 4100454, at *10. Third, if the formal complaint is denied the prisoner may submit an appeal using a BP-10 form to the requisite BOP Regional Director. *See* 28 C.F.R. § 542.15; *Banks*, 2011 WL 4100454, at *10. Fourth, an adverse decision from a Regional Director may be appealed by submitting a BP-11 form to the BOP General Counsel's Office. *See* 28 C.F.R. § 542.15; *Banks*, 2011 WL 4100454, at *10. An administrative remedy appeal is only considered finally exhausted when it has been considered

by the BOP General Counsel's Office in the BOP Central Office. *See* 28 C.F.R. §§ 542.14, 542.15.

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Where failure to exhaust appears on the face of a complaint, a complaint may be subject to dismissal under Rule 12(b)(6). *Williams v. Dep't of Corr.*, No. 11 Civ. 1515(SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011). When nonexhaustion is not clear from the face of the complaint, a defendant's motion should be converted to a motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *Stevens v. City of N.Y.*, No. 12 Civ. 1918 (JPO)(JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (citation omitted). When converting a defendant's motion to dismiss to one for summary judgment where plaintiff is a pro se prisoner, the potential consequences of a motion for summary judgment, as well as the procedural requirements for responding to one, must first be explained and the Court must also allow plaintiff the opportunity to take discovery. *See Hernández v. Coffey*, 582 F.3d 303, 305, 307–08 (2d Cir. 2009).

   2.  **Analysis**

Because Plaintiff's failure to fully exhaust is not plain from the face of the Complaint, and because Plaintiff has been given notice and an opportunity to be heard, (*see supra* Part II), *Kasiem v. Switz*, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) (finding that "[a]ll parties were on notice of the possibility of conversion; the defendants notified [pro se plaintiff] that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it,

[plaintiff] would need to submit evidence, such as affidavits"), I treat Defendants' motion as a motion for summary judgment on the narrow issue of whether Plaintiff has exhausted his PLRA administrative remedies, and consider extrinsic materials submitted by both parties.

Defendants have adduced evidence that Plaintiff failed to exhaust his administrative remedies before filing this suit.[4] On October 28, 2015, Plaintiff completed the first step of the BOP's Administrative Remedy Program by submitting a BP-8 stating that he "was in an altercation with another inmate" and suffered injuries and subsequent headaches. (Compl. 8; Johnson Decl. ¶ 13.)[5] However, Plaintiff failed to complete the necessary second step of the Administrative Remedy Program; instead of submitting a BP-9 in connection with the grievances asserted in his BP-8, Plaintiff submitted a *new* grievance in his BP-9, claiming that his BP-8 had been mishandled and "lost by [BOP] staff." (Compl. 9; Johnson Decl. ¶ 14.) In response to his BP-9, the BOP informed Plaintiff that his BP-8 had not been lost, and had been adequately handled. (Compl. 16–17; Johnson Decl. ¶ 14.) Thereafter, rather than file a BP-9 concerning the grievances asserted in his BP-8, Plaintiff filed a BP-10 in which he complained about the lack of

---

[4] Plaintiff asserts that he did not have an obligation to exhaust his administrative remedies. (*See* Pl.'s First Opp. 3–4.) However, the cases Plaintiff cites to support his argument are either outdated and no longer represent the law or are distinguishable. For instance, *Garrett v. Hawk*, 127 F.3d 1263 (10th Cir. 1998), which Plaintiff cites for the proposition that exhaustion is not required for *Bivens* claims seeking money damages, was abrogated by the Supreme Court in *Booth v. C.O. Churner*, 532 U.S. 731 (2001), which made clear that the PLRA "has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures," and that PLRA exhaustion is required for claims by prisoners seeking money damages pursuant to 42 U.S.C. § 1983, *id.* at 741. The Second Circuit has applied the holding in *Booth* to *Bivens* claims. *See, e.g.*, *Macias*, 495 F.3d at 42. Plaintiff also cites *Nussle v. Willette*, 224 F.3d 95 (2d Cir. 2000), for the proposition that PLRA exhaustion is not required for money damages claims, but *Nussle* was reversed and remanded by the Supreme Court, *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life"). Finally, *Malik v. District of Columbia*, 574 F.3d 781 (D.C. Cir. 2009), is inapposite. In that case, plaintiff's claim related to injuries he sustained while being transported between two facilities, and the grievance policy at issue excluded claims based on institutional transfers. *Id.* at 783. "Pl.'s First Opp." refers to Plaintiff's First Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated January 19, 2017. (Doc. 30.)

[5] "Johnson Decl." refers to the Declaration of Adam M. Johnson, dated December 21, 2016, submitted in support of Defendants' motion. (Doc. 18.)

medical treatment he received following the August 2015 attack and his placement in the Special Housing Unit. (Compl. 10–13, 18; Johnson Decl. ¶ 15.) The BOP rejected Plaintiff's BP-10 for failing to raise the grievances asserted therein at the institutional level, through a BP-9. (Compl. 19; Johnson Decl. ¶ 15.) Plaintiff then filed a BP-11, which the BOP again rejected based on Plaintiff's failure to complete the previous administrative steps. (Compl. 21; Johnson Decl. ¶ 16.) Notwithstanding the numerous notifications from the BOP that Plaintiff failed to complete the second step of the Administrative Remedy Program, Plaintiff has produced no evidence indicating that he successfully filed a BP-9 in connection with the grievances asserted in his BP-8.[6]

There is no basis to excuse Plaintiff from his obligation to exhaust his administrative remedies. In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit recognized that there may be an exception to the PLRA's exhaustion requirement when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). However, the Supreme Court's recent decisions in *Woodford v. Ngo*, 548 U.S. 81 (2006), and *Ross v. Blake*, 136 S. Ct. 1850 (2016), have called into question the continued vitality of some or all of the *Hemphill* exceptions. *See, e.g.*, *Lewis v. Eldridge*, No. 13-cv-01485 (ALC), 2016 WL 1718253, at *3 (S.D.N.Y. Apr. 27, 2016); *Jones v. Sposato*, No. CV 16-5121 (JFB) (GRB), 2017 WL 4023135, at *4 n.2 (E.D.N.Y. Aug. 22, 2017).

---

[6] Plaintiff finally filed a BP-9 in connection with the claims asserted in his BP-8 in June 2016. (Johnson Decl. ¶ 19.) The BP-9 was rejected because it was untimely and because Plaintiff failed to attach his BP-8 to the form. (*Id.*)

13

Indeed, the Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). Even assuming the *Hemphill* exceptions remain good law, none of the exceptions apply here.

First, the BOP Administrative Remedies Program was available to Plaintiff. Plaintiff successfully filed, and received a response to, his BP-8, and to his BP-9 asserting mismanagement of his BP-8. Plaintiff also filed a BP-10 and BP-11 and received responses to those filings. While Plaintiff asserts that he could not have properly exhausted his administrative remedies because prison officials did not respond to his administrative grievances in a timely manner, (Pl.'s First Opp. 10, 16–18), BOP regulations clearly provide that, if an administrative remedy is not responded to within the designated period, a prisoner may deem the lack of response as a denial and pursue the subsequent administrative steps, *see* 28 C.F.R. § 542.18; *Lewis*, 2016 WL 1718253, at *6.

Second, Plaintiff has not alleged that Defendants have forfeited their right to raise the affirmative defense of exhaustion. Although "a defendant may be estopped from asserting non-exhaustion where he takes some action to inhibit an inmate from accessing available administrative remedies," *Rambert v. C.O.M. Mulkins*, No. 11 Civ. 7421(KPF), 2014 WL 2440747, at *12 (S.D.N.Y. May 30, 2014) (internal quotation marks omitted), Plaintiff does not claim that Defendants took any affirmative action to prevent him from availing himself of the grievance procedures. *See Ruggiero*, 467 F.3d at 178 ("In our prior cases recognizing that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance

14

procedures."). Indeed, as noted above, Plaintiff availed himself of the grievance procedures but failed to follow the proper steps.

Finally, Plaintiff does not assert that any special circumstances excuse his failure to exhaust. When considering whether special circumstances exist, a court should look "at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Rambert*, 2014 WL 2440747, at *13 (internal quotation marks omitted). "Special circumstances may exist where the prison grievance regulations are confusing and the prisoner relies upon a reasonable interpretation of those regulations." *Id.* (quoting *Chavis v. Goord*, 333 F. App'x 641, 643 (2d Cir. 2009)). Here, Plaintiff does not allege that he misunderstood, or was confused by, the grievance process.

Considering all of the evidence in the light most favorable to Plaintiff, I find that no reasonable jury could conclude that Plaintiff properly exhausted his administrative remedies under the PLRA prior to filing his Complaint.

### B. *FTCA Claims*

Plaintiff also asserts a FTCA claim against the United States, alleging that MCC nurse Terrance Thomas provided Plaintiff with negligent medical care following the August 2015 attack. (*See* Doc. 34.) The FTCA is the exclusive remedy for a claim involving the purported negligence of a federal employee acting within the scope of his federal employment. *See* 28 U.S.C. § 2679(b)(1). The FTCA precludes tort suits against individuals and federal agencies and "makes the only proper federal institutional defendant in such an action the United States." *Sereika v. Patel*, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006). Defendants argue that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to submit an administrative tort claim to the BOP, as required by the FTCA.

"Exhaustion of administrative remedies is a prerequisite to suit in federal court under the FTCA." *Adekoya v. Fed. Bureau of Prisons*, No. 08 Civ. 1484(NRB), 2009 WL 1835012, at *2 (S.D.N.Y. June 18, 2009). Under the FTCA, "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). In order to exhaust FTCA administrative review, a prisoner must file his claim with the appropriate BOP Regional Office and then appeal to the BOP General Counsel's Office. *Adekoya*, 2009 WL 1835012, at *2 (citing 28 C.F.R. §§ 543.31, 543.32). The FTCA's exhaustion requirement "is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir.2005). "The burden is on the plaintiff to both plead and prove compliance with the statutory requirements [of the FTCA]. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).

Plaintiff does not allege or show that he submitted an administrative tort claim to the appropriate BOP Regional Office before bringing this suit. Accordingly, Plaintiff has not proved that he exhausted his FTCA administrative remedies; therefore, I do not have jurisdiction over his tort claim.

### C. *Dismissal Without Prejudice*

Complaints brought pro se typically are dismissed without prejudice. *See Cuoco*, 222 F.3d at 112 (stating that unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (per curiam) (citation omitted) (noting that a court "should not dismiss [a pro se complaint] without granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"). Although Plaintiff has already amended his complaint once, I see no reason to deviate from the normal practice in this case. Accordingly, Plaintiff's claims are dismissed without prejudice. Plaintiff may reassert his claims to the extent he can cure his failure to exhaust his administrative remedies, and his claims are not time-barred.

## V. Conclusion

For the reasons stated herein, Defendants' motion to dismiss and, in the alternative, for summary judgment, (Doc. 16), is GRANTED and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Opinion to the pro se Plaintiff and close this case.

SO ORDERED.

Dated: December 14, 2017
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge